IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION


Teresa Neighbors,                           )        Civil Action No. 8:11-cv-00170-JFA -JDA
                            Plaintiff,      )
                                            )        **REPORT AND RECOMMENDATION**
                                            )        **OF MAGISTRATE JUDGE**
            vs.                             )
                                            )
Michael J. Astrue,                          )
Commissioner of Social Security,            )
                                            )
                            Defendant.      )

         This matter is before the Court for a Report and Recommendation pursuant to Local

Civil Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1]

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain

judicial review of a final decision of the Commissioner of Social Security ("the

Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and

supplemental security income ("SSI").[2]  For the reasons set forth below, it is recommended

that the decision of the Commissioner be reversed and remanded for administrative action

consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

In September 2006, Plaintiff protectively filed applications for DIB and SSI, alleging an onset of disability date of September 3, 2006. [R. 99–110.] The claims were denied initially [R. 69–70, 74–79] and on reconsideration by the Social Security Administration ("the Administration") [R. 71–73, 85–89]. On June 29, 2007, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 91], and on July 29, 2009, ALJ Gregory M. Wilson conducted a de novo hearing on Plaintiff's claims [R. 46–68].

The ALJ issued a decision on October 27, 2009, finding Plaintiff not disabled. [R. 14–27.] The ALJ found Plaintiff suffered from a severe impairment, depression [R. 16, Finding 3], but did not have a severe impairment of drug and alcohol abuse [R. 17]. The ALJ further found Plaintiff did not have an impairment or combination of impairments that met or equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.*, Finding 4.] Specifically, the ALJ found Plaintiff's mental impairment did not meet the paragraph B criteria of Listing 12.04 because she had only mild restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties with concentration, persistence, or pace and had not experienced of episodes of decompensation of extended duration. [*Id.*] The ALJ also noted the evidence failed to establish the paragraph C criteria for Listing 12.04. [R. 18.]

Next, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform a full range of unskilled work at all exertional levels. [*Id.*, Finding 5.] The ALJ found Plaintiff is able to understand and remember simple instructions; is able to carry out short and simple instructions; is able to maintain concentration and attention for periods

2

of at least two hours; and would perform best in situations that do not require on-going interaction with the public.  [*Id*.]  Based on Plaintiff's RFC, the ALJ found Plaintiff was capable of performing her past relevant work as a housekeeper.  [R. 26, Finding 6.] Accordingly, the ALJ concluded Plaintiff was not under a disability as defined by the Social Security Act ("the Act").  [*Id.*, Finding 7.]

Plaintiff requested Appeals Council review of the ALJ's decision [R. 8–10] and submitted additional evidence to the Council [*see* R. 5], but the Council declined to review the decision [R. 1–5].  Plaintiff filed this action for judicial review on January 21, 2011. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred by

(1)     improperly weighing the opinions of treating physicians Drs. DeRosa and Amaker and the state agency physician, Dr. Varner [Doc. 13 at 14–23; Doc. 15 at 1–8];

(2)     performing an improper credibility analysis [Doc. 13 at 23–26; Doc. 15 at 8–10];

(3)     failing to include Plaintiff's moderate limitation in social functioning in the assessment of her RFC [Doc. 13 at 26; Doc. 15 at 10]; and

(4)     improperly relying on the vocational expert's testimony at Step 4 and failing to comply with SSR 00-4 [Doc. 13 at 26–28; Doc. 15 at 11–12].

Plaintiff further contends the Appeals Council erred in failing to properly consider new evidence.  [Doc. 13 at 28–33; Doc. 15 at 12–15; *see also* Doc. 18 (discussing the Fourth Circuit Court of Appeals' opinion in *Meyer v. Astrue* and arguing this case should be remanded because the additional evidence submitted to the Appeals Council is new and material and has not been weighed by an ALJ or the Appeals Council).]

The Commissioner contends the ALJ's decision is supported by substantial evidence. [Doc. 14 at 10–31.] Specifically, the Commissioner contends

(1) the ALJ reasonably evaluated the medical source opinions [*id.* at 11–16];

(2) the ALJ reasonably evaluated the credibility of Plaintiff's subjective statements [*id.* at 16–19];

(3) the ALJ's RFC finding accounted for all of Plaintiff's credible limitations [*id.* at 19–20]; and

(4) the ALJ reasonably found at Step 4 that Plaintiff could perform her past unskilled work as a housekeeper [*id.* at 20–22].

The Commissioner also argues the ALJ's decision is consistent with the record as whole, notwithstanding the additional evidence submitted to the Appeals Council. [*Id.* at 23–32; Doc. 19 (reply to Plaintiff's discussion of *Meyer v. Astrue* and that decision's application to this case)].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than

4

a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42

U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).  Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.  *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant

may produce further evidence on remand.").  After a remand under sentence four, the court

enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*,

941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be
> taken before the Commissioner of Social Security, but only
> upon a showing that there is new evidence which is material
> and that there is good cause for the failure to incorporate such
> evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the

basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is

material to the extent that the Commissioner's decision might reasonably have been

different had the new evidence been before him; (3) there is good cause for the claimant's

failure to submit the evidence when the claim was before the Commissioner; and (4) the

claimant made at least a general showing of the nature of the new evidence to the

reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C.

§ 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by*

*amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of*

*Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been
superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the
requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*,
*Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r*
*of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &*
*Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United
States has not suggested *Borders'* construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S.

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.      The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings

---

617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.  *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C. *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20

C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.    *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

**E.    *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31

---

[4]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. §§ 404.1545(e), 416.945(a)(1).

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a; 416.969a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id*.  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id*.

(4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe

into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

### III. Treating Physicians

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(e), 416.927(e). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV. Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V. Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged

pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman*, 829 F.2d at 518. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the

> functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor. But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## RELEVANT MEDICAL HISTORY

Plaintiff received medical treatment—including treatment for depression—at Milestone Family Medicine since at least October 1996. [*See, e.g.*, R. 278.] In October 2001, Dr. Joseph DeRosa of Milestone Family Medicine began treating Plaintiff for depression as well as various physical impairments. [See e.g., R. 225.] Dr. DeRosa's treatment notes between October 2001 and August 2006 indicate that, while Plaintiff experienced exacerbations in symptoms that were uncontrolled even on medication [R. 201–02, 215–16, 222–23, 225, 285–86, 292–93], her depression and anxiety did, at times, respond well to medication [R. 205, 207, 211, 218, 220–21, 224, 282–84, 287–91]

In late 2006, Dr. DeRosa stated Plaintiff's depression was uncontrolled. [R. 294, 333.] However, during this same time period, he observed that Plaintiff was fully oriented, with an anxious/worried mood but intact thought processes, had appropriate thought content, and had adequate attention, concentration, and memory. [R. 297.] Dr. DeRosa noted medication helped Plaintiff's symptoms and concluded that she had only "mild" work-related limitations in functioning. [*Id.*]

In January 2007, Plaintiff went to Anderson Oconee Pickens Mental Health Center ("Anderson MHC") for outpatient treatment of depression. [R. 316–18.] An Anderson MHC care provider observed that Plaintiff had a depressed mood and reported difficulty with memory, concentration, and sleep but was well-dressed and groomed, with normal psychomotor activity, normal and spontaneous speech, relevant thought processes, normal judgment, and suicidal thoughts but no plans or intent. [R. 323.] The care provider found

18

that Plaintiff's depression was moderate and rated her Global Assessment of Functioning ("GAF") at 52, indicating moderate symptoms.[6]  [*Id.*]

In March 2007, Dr. DeRosa noted Plaintiff was "mildly" depressed but that her condition was stable.  [R. 335–36.]  Plaintiff continued to receive treatment at Anderson MHC in May 2007 and June 2007.  [R. 377–79; *see also* R. 405 (duplicate of R. 379).]  On May 29, 2007, Dr. Julius Amaker of Anderson MHC completed a form titled "Mental Residual Functional Capacity Assessment" and a questionnaire regarding Plaintiff's mental functioning.  [R. 338–40, 342–43.]  As part of the "Mental Residual Functional Capacity Assessment," Dr. Amaker opined Plaintiff had marked limitations in her ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in proximity with others without being distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.  [R. 338–39.]  As to the other abilities listed on the form, Dr. Amaker indicated Plaintiff had moderate limitations.  [*Id.*]

---

[6] A GAF rating of 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 41 (4th ed., Text Revision 2000).

As part of the questionnaire completed at the request of Plaintiff's attorney, Dr. Amaker indicated Plaintiff could not understand or remember detailed instructions, but her ability to perform "simple" instructions was only "minimally impaired." [R. 342.] Dr. Amaker stated Plaintiff was "markedly" impaired in her ability to respond to changes in the work environment and in her ability to perform activities within a schedule. [*Id.*] Further, Dr. Amaker stated that if Plaintiff attempted to work on an eight-hour day, five-day per week basis, she would most probably have to miss more than three days of work per month and would have problems with attention and concentration sufficient to frequently interrupt tasks during the working portion of the workday. [R. 342–43.] Dr. Amaker indicated the diagnosis underlying Plaintiff's impairments was bipolar affective disorder, mixed, and the basis for Dr. Amaker's opinion was Plaintiff's racing thoughts, mood swings, pressured speech, strong family history of mood disorders among female relatives, and symptoms of depression. [R. 343.]

In June and August 2007, Dr. DeRosa noted Plaintiff was working at Milliken Cleaners; he also observed that Plaintiff had a normal mood and affect and again found her depression was stable. [R. 387–90; *see also* R. 117, 122 (reporting wages from Milliken Cleaners in 2007).] In July 2007, Dr. DeRosa also completed a questionnaire regarding Plaintiff's mental functioning, indicating Plaintiff could not handle an eight-hour a day, five-day a week job that required understanding, remembering, or carrying out anything more than simple instructions. [R. 363.] Dr. DeRosa stated that, if Plaintiff attempted to work on an eight-hour a day, five-day per week basis, 1) she would most probably have to rest away from the work station for significantly more than an hour during the working portion of the workday; 2) she would most probably have to miss more than

three days of work per month; and 3) she would have problems with attention and concentration sufficient to frequently interrupt tasks during the working portion of the workday. [R. 363–64.] These limitations were based on diagnoses of depression and anxiety resulting from clinical evaluation and observation of Plaintiff's mood. [R. 364.]

In September 2007, Dr. DeRosa completed a statement indicating that, despite different treatment strategies over approximately four years, Plaintiff's condition kept worsening to the point of being uncontrolled:

> While her condition has been somewhat cyclical, I would say approximately the last year she has been to the point where she would most probably be an unreliable employee, missing hours out of the work day on frequent occasions and having the most basic tasks frequently interrupted because of problems with attention and concentration.
>
> I base[] my conclusions about her diagnosis and the severity of her condition on her history but really independently of her history on my clinical observations in my office. She has been emotionally liable, with frequent crying and difficulty dealing with conversations that are necessary between us because of the troubles she has controlling her emotions. She is obviously anxious and shaky.

[R. 365.] Dr. DeRosa also indicated Plaintiff was "cooperative with treatment" and was "motivated to get herself back together." [*Id.*]

In November 2007, Plaintiff reported that she had "walked out" of her job at a dry cleaner's in late October 2007; Plaintiff indicated that she gets agitated or overwhelmed and then quits, but she wanted a job she looked forward to going to. [R. 373.] Also in November 2007, Dr. DeRosa opined Plaintiff's condition was "worsening" but also stated she had a "normal mood and affect" and that the severity of her condition had been stable since taking her prescribed medication. [R. 385–86.]

In March 2008, Plaintiff presented to Pickens County Mental Health Center ("Pickens MHC") for an initial interview.[7]  [R. 402–04.]  A care provider assessed her with dysthymia and rated her GAF at 60, indicating moderate symptoms.  [R. 403.]  A care provider later observed that Plaintiff had "dropped" treatment at Pickens MHC and was "not psychiatrically disabled," although she needed counseling.  [R. 401.]

In early 2009, Dr. DeRosa observed Plaintiff had a normal mood and affect and found her condition was stable.  [R. 394–95.]  In May 2009, Plaintiff reported she had been "more depressed lately, crying more, also having more difficulty sleeping."  [R. 392.]  Dr. DeRosa found Plaintiff had a "blunted affect" but that her depression and anxiety were stable.  [R. 392–93.]

## APPLICATION AND ANALYSIS

Plaintiff alleges the ALJ erred in his treatment of the medical opinions by failing to give sufficient reasoning for discounting the opinions of Drs. DeRosa and Amaker.  [Doc. 13 at 14–23; Doc. 15 at 1–8.]  The ALJ gave Dr. DeRosa's opinion "no weight" because the ALJ found the opinion inconsistent with Dr. DeRosa's records because he repeatedly stated Plaintiff's anxiety and depression was controlled with medication and that Plaintiff's mood and affect were normal.  [R. 23.]  The ALJ also gave Dr. Amaker's statements "no weight" because the terms used in the Mental Residual Functional Capacity Assessment form were inconsistent with regulatory policies and definitions.[8]  [R. 24.]  For the reasons

---

[7] The record indicates Plaintiff had been pursuing starting therapy at Pickens MHC since at least August 2007.  [See, e.g., R. 387, 385.]  The Pickens MHC records indicate Plaintiff was admitted on November 5, 2007, but her initial interview was not until March 4, 2008.  [R. 401–02.]

[8] The Court notes that the ALJ's decision is unclear as to the basis for this finding because the form completed by Dr. Amaker was apparently an approved Administration form.  [See R. 338–40 (form bearing SSA form number).]

stated below, the Court cannot conclude the ALJ's decision is supported by substantial evidence.

**Additional Evidence Submitted to the Appeals Council**

Plaintiff contends "every record fact which might change the outcome of a case must be weighed either by an ALJ or the Appeals Council." [Doc. 18 at 2–3.] Consequently, Plaintiff argues the Court should remand Plaintiff's case because the Appeals Council did not weigh new evidence submitted to it that demonstrates Dr. DeRosa's opinions are consistent with his treatment notes and Drs. DeRosa and Amaker's opinions are consistent with the medical evidence. [*See id.* at 6–7.] The Commissioner argues that, under *Meyer*, the ultimate question to be decided by a reviewing court is whether the ALJ's decision, in light of all record evidence, including any additional evidence submitted to the Appeals Council that is incorporated into the record, is supported by substantial evidence. [*See* Doc. 19 at 2.] The Commissioner contends that, in this case, even considering the additional evidence, the ALJ's decision is supported by substantial evidence, and in fact, the additional evidence bolsters the ALJ's decision. [*Id.* at 3.]

As both parties noted in their briefs, there has been a split in decisions in the Fourth Circuit on the issue of whether the Appeals Council is required to articulate its reasons for denying review of a decision after incorporating additional evidence into the record.[9] The

---

[9] *Compare, e.g.*, *Hollar v. Comm'r of Soc. Sec. Admin.*, 194 F.3d 1304, 1999 WL 753999, at *1 (4th Cir. 1999) (unpublished table decision) (agreeing with the Eighth Circuit Court of Appeals' decision in *Browning v. Sullivan*, 958 F.2d 817 (8th Cir. 1992), that the Appeals Council need not articulate its own assessment of additional evidence and noting the federal "regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision"), *with Jordan v. Califano*, 582 F.2d 1333, 1335–36 (4th Cir. 1978) (concluding that "the opinion of the appeals council, stating as it did only that the additional evidence had been considered, was plainly deficient"); *see also Jackson v. Astrue*, No. 08-579, 2009 WL 1181178, at *5 (D.S.C. May 1, 2009) (discussing split of authority within the Fourth Circuit).

Fourth Circuit recently addressed this split in *Meyer v. Astrue*, holding

> the regulatory scheme does not require the Appeals Council to do anything more than what it did in this case, *i.e.*, "consider new and material evidence . . . in deciding whether to grant review." *Wilkins* [*v. Sec'y, Dep't of Health & Human Servs.*], 953 F.2d [93,] 95 [(4th Cir. 1991)]; *see also Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006) (finding "nothing in the statutes or regulations" requires the Appeals Council to articulate its reasoning when "new evidence is submitted and the Appeals Council denies review"); *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (rejecting contention that Appeals Council must "make its own finding" and "articulate its own assessment" as to new evidence when denying review); *Damato v. Sullivan*, 945 F.2d 982, 988–89 (7th Cir. 1992) (holding that "the Appeals Council may deny review without articulating its reasoning" even when new and material evidence is submitted to it).

662 F.3d 700, 706 (4th Cir. 2011) (footnote omitted).  However, the court went on to note,

> Although the regulatory scheme does not require the Appeals Council to articulate any findings when it considers new evidence and denies review, we are certainly mindful that "an express analysis of the Appeals Council's determination would [be] helpful for purposes of judicial review." *Martinez*, 444 F.3d at 1207–08; *see also Damato*, 945 F.2d at 989 n.6 (noting that in "fairness to the party appealing the ALJ's decision, the Appeals Council should articulate its reasoning" when it rejects new material evidence and denies review).

*Id.*  Turning to the facts of the case before it, the Fourth Circuit observed that, as to the additional opinion of the claimant's treating physician submitted to the Appeals Council, "no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record."  *Id.* at 707.  Consequently, the Fourth Circuit concluded the case must be remanded for further fact finding because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," a job a reviewing court "cannot undertake [] in

the first instance." *Id.*

Here, based on *Meyer*, the Court concludes the Appeals Council did not err by considering Plaintiff's "new" evidence but not explaining its rationale for declining review. However, like the claimant in *Meyer*, Plaintiff presented additional evidence to the Appeals Council, which is now incorporated into the record, that no fact finder has attempted to reconcile with conflicting and supporting evidence in the record. Specifically, Plaintiff presented a psychological evaluation by Dr. Karl Bodtorf [R. 411–16]; a mental RFC assessment completed by Dr. Bodtorf [R. 417–18]; a questionnaire completed by Dr. Bodtorf [R. 419]; Plaintiff's school records [R. 420–30]; additional medical records from Dr. DeRosa [R. 432–37, 439–42, 446–49]; and a statement from Dr. DeRosa [R. 444]. These additional records support Drs. DeRosa and Amaker's opinions, which the ALJ gave no weight [R. 23–24]. In particular, Dr. DeRosa's statement explains what "stable" means in his treatment notes and that Plaintiff "continues to present with a very flat, blunt affect" [R. 444], which contradicts the ALJ's assessment of Dr. DeRosa's treatment notes [*see* R. 23 (finding Dr. DeRosa's treatment notes state Plaintiff's "condition is stable with medications and mood and affect is normal")]. Moreover, Dr. DeRosa's statement indicates he has tried several different medications but none seem to improve Plaintiff's condition [R. 444], which contradicts the ALJ's finding that Dr. DeRosa's treatment notes "repeatedly state[] that the anxiety and depression is controlled with medication" [R. 23].

The Court notes greater weight is typically accorded to a treating physician's opinion "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). Further, while the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent

with other evidence, *Craig*, 76 F.3d at 590, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position," *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  Because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder," *Meyer*, 662 F.3d at 707, and Plaintiff's additional evidence has not been weighed by a fact finder and tends to support treating physician opinions to which the ALJ assigned no weight, the Court cannot conclude the ALJ's decision is supported by substantial evidence.  Therefore, the Court recommends the case be remanded for consideration of Plaintiff's additional evidence.

**Plaintiff's Remaining Arguments**

Because the Court finds the case must be remanded to the Commissioner for the evaluation of the additional evidence submitted to the Appeals Council, the Court declines to specifically address Plaintiff's additional allegations of error by the ALJ.  However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

<u>**CONCLUSION AND RECOMMENDATION**</u>

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and the case be REMANDED to the Commissioner for further administrative action consistent with this recommendation.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

March 21, 2012

Greenville, South Carolina